# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

TYRONE MCKEE,)
)
    Petitioner,)
)
v.) Case No. CV407-065
)
FRED BURNETTE, Warden,)
Telfair State Prison,)
)
    Respondent.)

## REPORT AND RECOMMENDATION

Tyrone McKee, an inmate at Telfair State Prison in Helena, Ga., has filed a petition under 28 U.S.C. § 2254, alleging that he is being detained in violation of federal law. Doc. 1. For the reasons set forth below, the Court recommends that his § 2254 petition be **DENIED**.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

The factual narrative upon which McKee's § 2254 petition is based began at a nightclub on July 26, 2002. McKee v. State, 632 S.E.2d 636,

636–37 & n.1 (Ga. 2006). McKee was at the nightclub with his girlfriend, Faye McBride, celebrating Jeffrey Hazzard's birthday. Id. The festivities were short lived. Soon after the celebration began, McKee got into a fight with his brother in the nightclub parking lot. Id. During the fight McKee, in a pattern that was tragically repeated later in the evening, demonstrated that he is not a very good aim. One of his punches strayed from his intended target and struck his girlfriend in the face. Id.

McBride, who was living with McKee at the time, informed him that she no longer wanted him to live in her apartment and that he needed to remove his belongings. Id. McKee left the nightclub and went to the apartment, where his now ex-girlfriend was waiting along with Jeffrey Hazzard, the birthday boy. Id. McBride proceeded to place McKee's belongings on apartment's front porch and demanded that McKee surrender his apartment key. Id. An argument between McBride and McKee ensued. Id.

During the argument, a man named Marco Tilley drove up to the apartment, apparently to wish Hazzard a happy birthday. Id. Viewing the heated exchange between McKee and McBride, Tilley attempted to calm

McKee down, telling him to "chill out." Id. McKee told Tilley to "stay out of it." Id. Then, Tilley and McKee began to argue, with McKee telling Tilley that he should go get his guns because he (McKee) had his. Id.

Tilley obliged. He went to his vehicle, grabbed two handguns, and returned to the apartment porch with his arms crossed and a handgun in each hand. Id. As Tilley approached, McKee removed a handgun from his waistband and opened fire. One bullet ripped through Tilley's back, leaving him paralyzed, while another bullet inflicted a mortal would on Jeffrey Hazzard, who had been celebrating his birthday at a nightclub just a few moments earlier. Id. Minutes later, the police arrested McKee. In the back of the patrol car, he spontaneously said, "I did not mean to kill Jeff. Jeff got in the way. Jeff is my best friend." Id.

On March 31, 2004, a jury in Chatham County, Ga. found McKee guilty on charges of felony murder, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime. Doc. 1. He received a sentence of life plus five years. Id. He filed a direct appeal of his conviction, which the Supreme Court of Georgia affirmed on July 13, 2006. McKee, 632 S.E.2d 636. He did not seek habeas relief in state court,

but he did file a timely § 2254 petition in this Court. Doc. 1. In that petition, McKee raises two issues: (1) that the evidence presented at trial is insufficient as a matter of law to support any of his convictions; and (2) that the trial court violated his due process rights by failing to charge the jury on a theory of self-defense of a habitation. Doc. 1. After setting forth the legal principles that govern this case, the Court will address both errors alleged by McKee.

## II. LEGAL ANALYSIS

### A. Legal Framework

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d). In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained the "unreasonable application" clause of § 2254(d)(1), instructing federal courts to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 410 (emphasis added). The Supreme Court emphasized that a federal court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; Parker v. Head, 244 F.3d 831 (11th Cir. 2001); see also H.R. Rep. No. 104-518, at 111 (1996) (Conf. Rep.), as reprinted in 1996 U.S.C.C.A.N. 944, 944 (indicating that § 2254(d)(1) "requires deference to the determinations of state courts that are neither 'contrary to,' nor an 'unreasonable application of,' clearly established federal law"). Furthermore, AEDPA establishes a presumption of correctness for a state court's findings of fact, with the habeas petitioner bearing "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## B. McKee's Allegations of Error

McKee's § 2254 petition alleges two violations of his federal rights. First, McKee alleges that there was insufficient evidence to support his conviction. When a habeas petitioner asserts that there is insufficient evidence in the record to sustain his conviction, the court must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the petitioner guilty of the charged crimes beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979). When weighing the sufficiency of the evidence, the court is not required to find that the evidence excludes every hypothesis except that of guilt beyond a reasonable doubt. Id. at 326. "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id.

On direct appeal, McKee argued that the state's evidence, considered as a whole, did not support his conviction.[1] Doc. 9 ex. 2 at 13. Georgia's

---

[1] Although McKee's petition states that there was insufficient evidence to support a conviction on any of the charges, a thorough review of the arguments presented in his

felony murder statute provides that "[a] person also commits the offense of murder when, in the commission of a felony, he causes the death of another human being irrespective of malice." O.C.G.A. § 16-5-1(c). Here, McKee's confession in the police car that he killed Hazzard constitutes sufficient evidence to establish that his actions caused the death of another human. The only issue is whether the state established that the death occurred during the commission of another felony.

The predicate felonies underlying McKee's felony murder conviction were (1) possession of a firearm by a convicted felon and (2) and aggravated assault on Tilley.² McKee, 632 S.E.2d at 636–37 n.1. There is no dispute that McKee was a convicted felon and was in possession of a firearm. Furthermore, witness testimony established that McKee was an aggressor, inviting Tilley to retrieve his guns and informing Tilley that he had a gun, too. As the Georgia Supreme Court pointed out, under Georgia law, witness credibility is the fact finder's province. Id. at 637 (citing Farley v. State,

---

petition and supporting brief make it clear that his insufficiency of the evidence argument is aimed only at his conviction for felony murder under O.C.G.A. § 16-5-1(c).

² The relevant portion of Georgia's aggravated assault statute, O.C.G.A. § 16-5-21(a)(2), provides that "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon . . . ."

458 S.E.2d 643 (Ga. 1995)). Although McKee now argues that aggravated assault could not serve as a predicate felony because he was defending his home from Tilley, Georgia law does not provide for an affirmative defense to felony murder based on self-defense or defense of habitation if the defendant was an aggressor or was engaged in mutual combat. See Farley v. State, 458 S.E.2d 643, 643–44 (Ga. 1995). Furthermore, McKee has pointed to no "well-established principle" of federal law that the state violated in finding him guilty of felony murder. Therefore, under the principles enunciated in Jackson, 443 U.S. at 324, habeas relief should be **DENIED** on this issue.

McKee's second contention is that the trial court deprived him of his Fourteenth Amendment right to due process by refusing to instruct the jury on a theory of defense of habitation. Doc. 1. For the reasons set forth below, that claim is procedurally barred, and even if it were not, it would not entitle McKee to § 2254 relief.

The claim is procedurally barred because McKee did not raise a due process claim at trial or on direct appeal. Although he appealed the trial court's failure to include the requested jury instruction, his appeal was

based on state law. McKee, 632 S.E.2d at 637. He never couched the failure to give the requested instruction in terms of a federal due process violation. Doc. 9 ex. 2 at 4–9. "If a habeas petitioner wishes to claim that [a] . . . ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 366 (1995). Therefore, in state court McKee did not raise, and therefore did not exhaust, any federal due process claims.[3] Id. Although unexhausted claims should be presented in state court before being brought in federal court,

> when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [a federal court] can forego the needless "judicial ping-pong" and just treat those claims now barred by state law as no basis for federal habeas relief.

Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998).

The Court's respect of state-court procedural default rules is rooted in Supreme Court precedent. In Coleman v. Thompson, 501 U.S. 722, 750 (1991), the Supreme Court held that:

---

[3] The Court recognizes that in one sense, this claim is exhausted because it can no longer be raised in state court. However, in the sense of presentment before a state court, it was never exhausted.

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Applying the Coleman Court's holding, the Eleventh Circuit has stated that a § 2254 petitioner who fails to properly raise his federal claims in state court is "procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." Bailey v. Nagle, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)).

"Such procedural default can arise two ways. First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, Sykes requires the federal court to respect the state court's decision." Id. (citing Atkins v. Singletary, 965 F.2d 952, 956 (11th Cir. 1992)). "Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in

state court." Id. (citing Snowden, 135 F.3d at 737). To determine whether a claim is procedurally barred in this manner, the federal court must "ask whether any attempt [the petitioner] now makes to exhaust his claims in [state] courts would be futile under [the state's] procedural default doctrine." Id.

Because McKee never raised a federal due process claim in state court, that claim would be barred by O.C.G.A. § 9-14-48(d), which precludes state habeas review of any issue not preserved for collateral attack in a state court by a "timely motion or objection or otherwise compl[ying] with Georgia procedural rules at trial and on appeal." See also Black v. Hardin, 336 S.E.2d 754 (Ga. 1985) (failing to timely object to any alleged error or to pursue such error on appeal will generally preclude review by writ of habeas corpus). Because McKee's federal due process claim was not raised at trial or on appeal, a Georgia habeas court would find it barred under O.C.G.A. § 9-14-48(d).

It is likewise barred here, unless McKee can demonstrate that he qualifies for an exception to this rule. See Bailey, 172 F.3d at 1302; see also Sims v. Singletary, 155 F.3d 1297, 1311 (11th Cir. 1998) ("A federal court

11

must dismiss those claims or portions of claims that are procedurally barred under state law." (citations omitted)).

To qualify for an exception, McKee must demonstrate either "cause and prejudice" for his state court procedural default or that he is "actually innocent." Johnson v. Singletary, 938 F.2d 1166, 1174–75 (11th Cir. 1991). As there is no claim (or evidence) of actual innocence, McKee's only resort is to put forth facts establishing cause for and prejudice from his failure to lodge a federal due process objection. He has failed to meet that burden.

There is no "cause" for failing to raise a due process objection because McKee knew at trial that the requested instruction would not be given. He could have objected on federal due process grounds then or could have raised the issue on direct appeal. Nor is there "prejudice from" McKee's failure to raise a federal due process claim because, as explained below, such a claim would have proven futile.

Even if McKee was not procedurally barred from raising this issue on appeal, it would provide no basis for relief under 28 U.S.C. § 2254. As the Georgia Supreme Court noted, an aggressor or a "mutual combatant" cannot defend against felony murder charges on defense of habitation

grounds, unless that person withdraws from the encounter and notifies other participants that he is doing so. See McKee, 632 S.E.2d at 637 (citing Farley, 458 S.E.2d 643). There is no evidence in the record that McKee ever announced to Tilley his intent to withdraw from the conflict. Moreover, the record indicates that the jury was instructed on other theories of self-defense and justifiable homicide, rendering the failure to instruct on a defense of habitation theory harmless. As McKee has pointed to no Supreme Court precedent establishing that these facts raise any genuine due process concerns, his petition should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this 14TH day of November 2007.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA